UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHAEL ANTHONY GREEN,

                        Petitioner,

     v.                                                  9:23-CV-0127
                                                         (GTS)
D. CHRISTENSEN, Warden, FCI Ray Brook

                        Respondent.
_____

APPEARANCES:                                          OF COUNSEL:

MICHAEL ANTHONY GREEN
Petitioner, pro se
47108-039
Ray Brook Federal Correctional Institution
P.O. Box 900
Ray Brook, NY 12977

HON. CARLA B. FREEDMAN                  RANSOM P. REYNOLDS, ESQ.
United States Attorney for the                    Ass't United States Attorney
Northern District of New York
100 South Clinton Street
P.O. Box 7198
Syracuse, New York 13261

GLENN T. SUDDABY
United States District Judge

## DECISION and ORDER

### I.    INTRODUCTION

Petitioner Michael Green seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2241.  Dkt. No. 1, Petition ("Pet."); Dkt. No. 1-1, Memorandum Brief in Support of Petition

(Dkt. No. 1-1 at 1-12 "Memo."; Dkt. No. 1-1 at 13-23 "Supporting Exhibits"[1]).  Respondent opposed the petition.  Dkt. No. 11, Response to Petition for Writ of Habeas Corpus ("Resp.").[2] Petitioner did not reply.

For the reasons outlined below, the petition should be denied and dismissed.

## II.     RELEVANT BACKGROUND

### A. Underlying Criminal Conviction

On April 11, 2013, the United States District Court for the Eastern District of Michigan sentenced petitioner to a 471-month term of imprisonment for violating several federal robbery and firearms laws.  *United States v. Green*, No. 2:12-CR-20218 (E. D. Mich. Apr. 11, 2013), Dkt. No. 313, Transcript of Sentencing, at 19-25.[3]

### B. Incident Report No. 3514856

While serving his sentence at Federal Correctional Institution Pekin, petitioner ran afoul of prison rules.  Specifically, on June 15, 2021, Corrections Officer Hood authored Incident Report No. 3514856 ("Incident Report") charging petitioner with violating Bureau of Prisons ("BOP") Code 224, Assaulting Any Person (Less Serious).  Memo. at 13-14.  Hood reports that,

> "at approximately 7:48 AM, I notified [petitioner and a number of other prisoners] that [they were] not to be working out in the day room of the unit.  As I walked down the stairs, I felt a pen hit me in the upper back.  I immediately looked up and asked who threw the pen with no reply.  As I got to my office, [petitioner] approached me and stated 'it was me don't punish the entire unit[.]' . . .

---

[1] Respondent confirmed that the Supporting Exhibits which petitioner attached to his Memorandum were legitimate, accurate, and relevant to the instant action.  Consequently, the Court takes judicial notice that the Supporting Exhibits are not disputed and represent the State Court Record.

[2] For the sake of clarity, citations to parties' submissions refer to the pagination generated by CM/ECF, the Court's electronic filing system.

[3] Respondent represents that petitioner was resentenced in October 2014.  Resp. at 3.  However, a search of the docket sheet does not indicate petitioner was ever resentenced.  *See United States v. Green*, No. 2:12-CR-20218 (E. D. Mich. Apr. 11, 2013).  Given the nature of petitioner's challenge, this discrepancy is irrelevant and need not be further addressed.

>     [Petitioner] was also identified by the Nice Vision Camera
>     System."

*Id.* at 13.

Petitioner admits the pen belonged to him but disputes Officer Hood's account that the pen was thrown.  Memo. at 13.  Petitioner alleges that at the time of the incident he could not have thrown the pen as he had his "back [] turned," and his "hands [were] full[.]"  *Id.*  Petitioner concludes that, instead, the pen must "have fallen" out of his pocket and struck Officer Hood.  *Id.*

Officer Ramsey investigated the incident and provided petitioner and the Unit Disciplinary Committee a copy of the Incident Report the following day.  Memo. at 13-14.  Officer Ramsey reports that he advised petitioner of his rights concerning the disciplinary process and that petitioner acknowledged he understood said rights.  *Id.* at 14.  After reviewing the Incident Report, the Unit Disciplinary Committee referred the issue "to [a Discipline Hearing Officer ("DHO")] for hearing[.]"  *Id.*

At the DHO hearing, petitioner requested and received a staff representative to appear with him.  Memo at 15.  Petitioner also requested a review of the camera footage and initially requested witnesses to appear on his behalf before ultimately "waiv[ing his right to a witness] prior to [the] hearing."  *Id.* at 16.[4]  Officer Murphy presided over the DHO hearing on June 23, 2021, finding that "[b]ased on the greater weight of the evidence[,]" petitioner "committed the prohibited act of Assault, Code 224."  *Id.*

In coming to his conclusion, Officer Murphy relied upon: (1) Officer Hood's initial statement; (2) petitioner's Incident Report statement; and (3) camera footage.  *Id.*  The

---

[4]  Petitioner disputes that he waived his right to call witnesses at the DHO hearing.  See Section IV.B below for context.

camera footage proved dispositive. *Id.* Specifically, the camera footage showed that the pen "move[d] at a fast rate of speed" and fell at such an angle that led the DHO to conclude the pen was thrown. *Id.* Further, the camera footage showed that the prisoners' "stood on the top tier" near the stairs and "remain[ed] standing" there before and after the pen struck Officer Hood, directly contradicting petitioner's assertion that he did not throw the pen because his "back was turned" from Officer Hood immediately prior to the incident. *Id.* Based on the video evidence and petitioner's admission that the pen belonged to him, the DHO report concludes that petitioner intentionally threw the pen[5] and was not "forthright about the incident[.]" *Id.* As such, the DHO found petitioner committed Assault, Code 224. Officer Murphy stripped petitioner of 27 days of good conduct time ("GCT") and placed petitioner in 15 days of disciplinary segregation. *Id.*

## III. THE PETITION

Petitioner seeks federal habeas corpus relief, arguing that the BOP violated his constitutional rights at his DHO hearing. Pet. at 6. Specifically, petitioner argues that the BOP violated his due process rights when it: (1) denied him the opportunity to call witnesses;[6] and (2) convicted him of Assault, Code 224 without sufficient evidence supporting the

---

[5] In his Memorandum, petitioner points out that the DHO report states "[t]he DHO does not believe … [the act] was intentional." Memo. at 16. However, considering that in the preceding sentence the DHO questioned petitioner's truthfulness and in the subsequent sentence the DHO found petitioner guilty of assault, the Court concludes that the DHO clearly meant "unintentional." *Id.*

[6] Petitioner seems to actually argue that his due process rights were violated not because he was denied the opportunity to call witnesses but because witnesses did not testify at his DHO hearing. Pet. at 7 ("[M]y due process [was] violated[] by not calling any witnesses."). The argument fails on its face as it is not a constitutional requirement but a constitutional right to call witnesses at a disciplinary hearing. *See Superintendent, Mass. Corr. Inst., Warpole v. Hill*, 472 U.S. 445, 454 (1985). However, a pro se habeas corpus petition must be construed liberally in petitioner's favor. *Simmons v. Abruzzo*, 49 F.3d 83, 87 (2d Cir. 1995). Therefore, reading the petitioner's argument in the most favorable light, the Court concludes petitioner is contending that the BOP denied him the opportunity to call witnesses at the DHO hearing.

decision. Memo. at 3-8. Petitioner seeks expungement of his disciplinary record and restoration of the 27 days of GCT. Pet. at 7.

Respondent opposes the petition. Resp. at 5-9. Respondent argues that petitioner received all the process due to him under the Constitution, including (1) the opportunity to call witnesses, id. at 5-7; and (2) a DHO decision supported by sufficient evidence. Id. at 7-9.

IV.   DISCUSSION

A. Jurisdiction

Habeas corpus relief is available if a prisoner is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). A petition is properly brought pursuant to 28 U.S.C. § 2241 where a federal prisoner challenges the execution of their sentence, rather than its imposition. See Adams v. United States, 372 F.3d 132, 134-35 (2d Cir. 2004); Jiminian v. Nash, 245 F.3d 144, 146-47 (2d Cir. 2001). Execution of a sentence includes, among other things, the computation of the sentence; thus, a § 2241 petition is the proper means to challenge said computation. Adams, 372 F.3d at 135 (citing Nash, 245 F.3d at 146); see also Cook v. N.Y.S. Div. of Parole, 321 F.3d 274, 278 (2d Cir. 2003) (explaining that a petitioner can use § 2241 to challenge a federal official's computation of a sentence, parole decisions, or prison disciplinary actions). Petitions filed under § 2241 must name the petitioner's warden as respondent and be filed in the district of the petitioner's confinement. 28 U.S.C. § 2241(a); Rumsfeld v. Padilla, 542 U.S. 426, 435, 447 (2004).

Here, petitioner challenges a disciplinary action and its impact on the computation of his federal criminal sentence and is incarcerated at FCI-Ray Brook, in the Northern District of New York. Accordingly, the § 2241 petition is the appropriate procedural vehicle to address

petitioner's grievances, *Adams*, 372 F.3d at 135, and petitioner filed suit in the proper court. 28 U.S.C. § 2241(a).

### B. Right to Call Witnesses

To comply with due process in disciplinary proceedings, the BOP need only give prisoners: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in [their] defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Williams v. Menifee*, 331 F. App'x. 59, 60 (2d Cir. 2009) (quoting *Superintendent, Mass. Corr. Inst., Warpole v. Hill*, 472 U.S. 445, 454 (1985) (internal quotation marks omitted)); *see Shakur v. Selsky*, 391 F.3d 106, 119 (2d Cir. 2004) ("[T]he *only* process due an inmate is that minimal process guaranteed by the Constitution[.]") (emphasis in the original).

In the event a prisoner's due process rights are violated, the Second Circuit has long held that "it is entirely inappropriate to overturn the outcome of a prison disciplinary proceeding because of a procedural error without making the normal [] assessment as to whether the error was harmless or prejudicial." *Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir. 1991). Thus, prior to receiving judicial relief for a due process violation in a disciplinary hearing, a prisoner must demonstrate that the violation harmed them in some way. *Bullock v. Reckenwald*, No. 1:15-cv-5255, 2016 WL 5793974, at *12 (S.D.N.Y. Aug. 24, 2016) (citing *Powell*, 953 F.2d at 750); *see Rosario-Santiago v. Pliler*, No. 1:21-CV-3202, 2022 WL 2991015, at *6 (S.D.N.Y. July 7, 2022) (finding that small errors in the process provided to the prisoner does not require judicial relief as the errors "did not prejudice [the prisoner]"). Proof of prejudice "must be definite and not speculative." *United States v. Birney*, 686 F.2d

102, 105-06 (2d Cir. 1982).  The burden to demonstrate prejudice lies with the petitioner.  *Id.* at 105.

Here, petitioner alleges that he never received an opportunity to call witnesses at the DHO hearing, violating his due process.  Memo. at 5-6.  However, in the Supporting Exhibits to petitioner's Memorandum, petitioner included the DHO report which directly contradicts petitioner's assertion that he was denied the opportunity to call witnesses.  Supporting Exhibits at 16.  Specifically, the DHO report states that petitioner "initially requested witnesses [to be called], but chose to waive [the right] prior to [the] hearing."  *Id.*  Petitioner does not address the discrepancy in his Memorandum.  Petitioner also does not explicitly challenge the accuracy of the DHO report.  Without further explanation about the discrepancy, the Court does not find petitioner's allegation credible.  Therefore, the Court will accept the DHO report as fact and that petitioner waived his right to call witnesses at the DHO hearing.

Even if the Court found petitioner's allegations credible, petitioner fails to demonstrate that he suffered prejudice from the alleged due process violation. Petitioner argues that he suffered harm when prison officials prohibited his potential witnesses from testifying.  Memo. at 6-7.  Specifically, petitioner contends that his potential witnesses would have corroborated his claim that the pen "accidentally" fell from petitioner's pocket, thus rebutting the BOP's evidence.  Memo. at 6-7.  However, considering the video evidence indicating that the pen was thrown at Officer Hood, the Court concludes that any witness testimony to the contrary would be speculative and, ultimately, in vain.  Therefore, the Court finds that petitioner fails to demonstrate that the alleged due process violation caused "definite" prejudice.  As such, petitioner is not entitled to judicial relief and his first count is denied.

### C. Evidentiary Standard

Due process requires that "the findings of [a] prison disciplinary board [be] supported by some evidence in the record." *Hill*, 472 U.S. at 454; *see Zavaro v. Coughlin*, 970 F.2d 1148, 1152 (2d Cir. 1992) (finding due process requires only a "modicum of evidence to support" a disciplinary board's decision) (internal quotation marks omitted); *Johnson v. Goord*, 487 F. Supp. 2d 377, 382 (S.D.N.Y. 2007) (holding that if "there is any evidence in the record" supporting "the conclusion reached by the disciplinary board[]" a prisoner's due process is satisfied) (internal quotation marks omitted); *Fulton v. Baltazar*, No. 16-cv-6085, 2018 WL 389097, at *4 (S.D.N.Y. Jan. 11, 2018) ("Ascertaining whether [the 'some evidence'] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citing *Hill*, 472 U.S. at 455-56) (internal quotation marks omitted). The Second Circuit has clarified that the "some evidence" standard is "extremely tolerant" but still requires "reliable evidence." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004); *see Fulton*, 2018 WL 389097, at *4 ("'[A]ny evidence' is not to be construed literally; 'reliable evidence' is required under the 'some evidence' standard.").

The facts of *Hill* provide a useful guide for determining whether "some evidence" exists in the present case. In *Hill*, a prison guard heard a commotion in a walkway, and upon investigating, discovered an inmate with facial injuries on the ground and three other inmates fleeing in the opposite direction. *Hill*, 472 U.S. at 447-48. No other witnesses were present. *Id.* Relying on the guard's testimony, a disciplinary board found two of the fleeing inmates culpable for the assault. *Id.* at 448. On appeal, the Massachusetts Supreme Judicial Court

overturned the disciplinary board's conclusion, holding that it failed to satisfy due process requirements as the guard's testimony "did not support [the disciplinary board's] inference that more than one person had struck the victim or that either of the [inmates] was the assailant or otherwise participated in the assault." *Id.* at 456.  The Supreme Court overturned the lower court's decision stating that due process does not require the evidence relied upon by the disciplinary board to "logically preclude[ every possible] conclusion but the one reached by the disciplinary board." *Id.* at 457.  Instead, the Supreme Court noted that the guard's testimony was "some evidence" that supported the disciplinary board's inference that an assault occurred.  The Supreme Court concluded that, however "meager[,]" such evidence satisfied due process requirements.  *Id.* at 457.

As in *Hill*, the available evidence here does not logically preclude every other possible outcome but does provide "some evidence" to support the DHO's inference that petitioner threw the pen at Officer Hood.  Petitioner's admission that the pen belonged to him, the video evidence showing the mannerisms and movement of petitioner and his fellow prisoners in the area at the time of the assault, and the video evidence showing the pen striking Officer Hood at a high rate of speed and at an odd angle -- inconsistent with a falling object -- all act as "some evidence" for the DHO's conclusion that petitioner threw the pen at Officer Hood.  Memo. at 13, 15-16.  That is all due process requires.  As such, the Court concludes that the DHO's decision was based on sufficient evidence to satisfy petitioner's due process rights.  Accordingly, the petitioner's second count is denied.

V.     **CONCLUSION**

**WHEREFORE**, it is

**ORDERED** that the petition, Dkt. No. 1, is **DENIED AND DISMISSED** in its entirety;

**ORDERED** that because the Petition was brought under 28 U.S.C. § 2241, a certificate of appealability is not required for Petitioner to appeal the denial of his Petition. *See Murphy v. United States*, 199 F.3d 599, 601 n.2 (2d Cir. 1999) (holding that the Antiterrorism and Effective Death Penalty Act's certificate of appealability requirement does not apply to § 2241 petitions); and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: April 15, 2024

Glenn T. Suddaby
U.S. District Judge